IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| BLAKE SANDLAIN, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Civil Action No. 1:22-00222 |
| ) | |
| WARDEN ROKOSKY, ) | |
| ) | |
| Respondent. ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Supplement. (Document Nos. 2 and 3.) By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.) Having examined Petitioner's Petition and Supplement, the undersigned finds and hereby respectfully recommends that such should be denied.

## FACT AND PROCEDURE

On May 12, 2022, Petitioner, acting *pro se*,[1] filed his Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Supplement. (Document Nos. 2 and 3.) Petitioner claims that his Unit Team at FCI McDowell are incorrectly calculating his criminal history points and score, which is resulting in a higher security classification. (Id.) Specifically, Petitioner contends that his Unit Team is failing to correct his inaccurate criminal history score of 10. (Id.) Petitioner argues that his correct criminal history score is 6. (Id.) Petitioner requests that this Court require his "Unit

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Team to follow their clearly established [non]-discretionary Policy 5100.08 . . . that states in calculating criminal history points for custody sheets, the calculation for history points on the custody sheet is derived from the United States Sentencing Guidelines (U.S.S.G.)." (Id.) Petitioner argues that U.S.S.G. provide that any predicate offense that was commenced outside fifteen years of the instant offense, cannot be used for calculation for security custody points. (Id.) Petitioner notes that his Presentence Investigation Report ["PSR"] contains prior offenses occurring in 1985 and 1987. (Id.) Petitioner argues that his Unit Team improperly used his prior offenses from 1985 and 1987 when determining his security classification. (Id.) Citing the Sentencing Guidelines, Petitioner argues his 1985 and 1987 offenses should not be considered when calculating his criminal history points because both offenses occurred more than fifteen years before his 2014 offense date. (Id.) Petitioner argues that in determining his criminal history points, his Unit Team erroneously considered his 1985 and 1987 offenses as contained within his PSR. (Id.) Petitioner argues that an incorrect criminal history score can impact the number of days per month that he can receive as earned time credit. (Id.) Petitioner explains that under the First Step Act of 2018, the BOP completes a risk assessment "to determine which prisoners will receive earn time credits towards their sentence." (Id.) Petitioner states "the categories points on the PATTERN score sheet are derived from the security and custody form . . ., and will impact whether a prisoner receives 10 days per month off his sentence, or 15 days off his sentence per month. (Id.) Petitioner, thus, emphasizes the importance of his "information being accurate from the security and custody sheet." (Id.) Therefore, Petitioner requests that this Court direct BOP staff to correct his security classification.[2] (Id.)

As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Documentation

---

[2] Petitioner asserted a similar claim in Civil Action Nos. 1:19-cv-00229 and 1:20-cv-00790.

of Informal Resolution Attempt" dated November 15, 2017 (Document No. 3-1, p. 1); (2) A copy of Program Statement 58100.08 (Id., pp. 2 and 12); (3) A copy of Petitioner's "Request for Administrative Remedy" dated December 4, 2017 (Id., pp. 3 - 4); (4) A copy of the Warden of FCC Pollock, Calvin Johnson's "Response to Request for Administrative Remedy" dated January 24, 2018 (Id., p. 5); (5) A copy of Petitioner's "Custody Classification Forms" dated January 5, 2018 and July 15, 2020 (Id., pp. 6 - 7); (6) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated July 15, 2019 (Id., pp. 8 - 9); (7) A copy of a "Operations Memorandum" dated March 15, 1993, concerning "Maintenance of Inmate Files" (Id., pp. 10 – 11); (8) A copy of U.S.S.G. § 4A1.1(a) (Id., p. 13); and (9) A copy of a Petitioner's "PATTERN Risk Scoring" (Id., p. 14).

By Order entered on June 8, 2022, the Court ordered that Respondent file an Answer to the allegations contained in the Petitioner's Petition and show cause, if any, why the Writ of Habeas Corpus sought by the Petitioner in this case should not be granted. (Document No. 7.) On June 30, 2022, Respondent filed his Response to the Order to Show Cause. (Document No. 9.) Respondent argues that Petitioner's Petition should be denied based upon the following: (1) "Petitioner has failed to exhaust administrative remedies" (Id., pp. 5 – 6); (2) "Petitioner's challenge to the accuracy of the information in his PSR is without merit" (Id., pp. 6 – 9); and (3) "The BOP's Central Files are exempt from the Amendment and Civil Remedies Provision of the Private Act" (Id., pp. 9 – 10).

As Exhibits, Respondent attaches the following: (1) The Declaration of James White (Document No. 9-1, pp. 2 - 6); (2) A copy of Program Statement 5100.08, Inmate Security Designation and Custody Classification (Id., pp. 8 - 10); (3) A copy of Petitioner's Security/Designation Data dated June 14, 2022 (Id., p. 12); (4) A copy of Program Statement

5800.17, Inmate Central File, Privacy Folder, Parole Mini-Files (Id., pp. 14 - 33); and (5) A copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated June 14, 2022 (Id., pp. 35 – 43).

On August 8, 2022, Petitioner filed his Reply. (Document No. 11.) Petitioner first argues that his administrative remedies have been exhausted. (Id., p. 2.) Citing the "copy of [his] BP-11 exhibit A attached from General Counsel," Petitioner contends this confirms that "Petitioner completed the administrative remedy process." (Id.) Next, Petitioner argues that Respondent's "position that the BOP has no authority to correct an inaccurate score on an inmate custody sheet is untrue." (Id.) Citing Program Statement 5100.08, Petitioner argues that the Case Manager Coordinator and the Unit Team have authority to correct any errors. (Id.) Finally, Petitioner asserts that his 1985 and 1987 offenses were improperly considered in his PSR and he objected to such during his sentencing hearing. (Id., p. 3.) Petitioner, however, explains that the sentencing judge "adopted the Michigan Department of Corrections Policy and disregarded the fact that the offenses fall outside the fifteen years of the instance offense and such will have an adverse effect on Petitioner's security classification as well as the execution of his sentence." (Id., pp. 3 – 4.)

As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated March 20, 2021 (Remedy ID No. 1057627-A1) (Document No. 11-1, p. 1); (2) A copy of Administrator Ian Connors' Response to Petitioner's Central Office Administrative Remedy Appeal dated June 16, 2021 (Id., p. 2); (3) A copy of Program Statement 5100.08 (Id., p. 3 - 4); and (4) A copy of Petitioner's Sentencing Transcripts as filed in United States v. Sandlain, Case No. 14-cr-20283 (E.D.Mich. May 7, 2015) (Id., pp. 5 – 21).

## ANALYSIS

**1.     Failure to Exhaust:**

Although 28 U.S.C. § 2241 does not contain a statutory exhaustion requirement, Courts consistently require prisoners to exhaust their administrative remedies prior to seeking *habeas* review under Section 2241. See McClung v. Shearin, 90 Fed.Appx. 444, 445 (4th Cir. 2004)(unpublished)(citing Carmona v. Bureau of Prisons, 243 F.3d 629, 634 (2nd Cir. 2001)); Pelissero v. Thompson, 170 F.3d 442, 445 (4th Cir. 1999); Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994). Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being haled into Court. See Jones v. Bock, 549 U.S. 199, 204, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); McCarthy v. Madigan, 503 U.S. 140, 144-45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The purpose of exhaustion, however, is frustrated "[w]hen an inmate attempts to exhaust an issue before the issue is ripe for review [because] the BOP is deprived of its opportunity to properly address the issue before being haled into court." Specter v. Director, 2010 WL 883733, * 4 (D.S.C. Mar. 5, 2010)(slip copy)(finding that petitioner failed to properly exhaust his claim for RRC placement because "no recommendation or decision had been made in his case yet and would not occur until 17 to 19 months prior to his anticipated release date").

The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to

an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

Respondent argues that Petitioner's Section 2241 Petition should be denied because Petitioner did not exhaust his administrative remedies. (Document No. 9, pp. 5 - 6.) In support, Respondent submits the Declaration of James White, A Case Manager at FCI McDowell. (Document No. 9-1, pp. 2 - 6.) Mr. White declares that in his position he has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id.) Although Mr. White acknowledges that Petitioner has filed administrative remedies relating to his custody classification, Mr. White states that such have not

6

been fully exhausted. (Id.) Specifically, Mr. White states, in pertinent part, as follows:

* * *

30. Petitioner has filed 79 administrative remedies while incarcerated with the BOP, including remedies relating to his custody classification.

31. However, the administrative remedy series relating to custody classification 1008857-F1, R1, and A1, has not been exhausted.

32. Review of Petitioner's administrative remedy history reveals he properly submitted and received responses to administrative remedy 1008857-F2 on April 24, 2020, and Regional Office appeal 1008857-R1 on June 9, 2020.

33. However, when he submitted Central Office appeal 1008857-A1, it was rejected and Petitioner did not attempt to refile the appeal. Accordingly, Petitioner did not exhaust his administrative remedies in relation to his claims in this case.

* * *

(Id., p. 4.) As an Exhibit, Mr. White attaches a copy of Petitioner's "Administrative Remedy Generalized Retrieval" dated June 14, 2022. (Id., pp. 35 - 43.)

In Reply, Petitioner argues that his administrative remedies have been exhausted. (Document No. 11, p. 2.) Citing the "copy of [his] BP-11 exhibit A attached from General Counsel," Petitioner contends this confirms that "Petitioner completed the administrative remedy process" regarding his claim. (Id.) As Exhibits, Petitioner attaches the following: (1) A copy of Petitioner's "Central Office Administrative Remedy Appeal" dated March 20, 2021 (Remedy ID No. 1057627-A1) (Document No. 11-1, p. 1); and (2) A copy of Administrator Ian Connors' Response to Petitioner's Central Office Administrative Remedy Appeal dated June 16, 2021 (Id., p. 2).

Based upon a review of the record, the undersigned finds that Petitioner failed to fully exhaust his available administrative remedies. As stated above, Petitioner argues that he is receiving less earned time credit because the BOP is incorrectly calculating his criminal history score. Although Petitioner appeared to challenge his criminal history points in support of Remedy

ID No. 1057627-A1, Remedy ID NO. 1057627 concerned Petitioner's custody designation assignment based upon his Population Management Variable (MGTV). (Document No. 11-1, pp. 1 – 2.) Specifically, Petitioner requested the removal of his Population Management Variable and a transfer to a camp. (Id.) "A Management Variable is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level."[3] P.S. 5100.08, Chapter 5, p. 1. Thus, there is no indication that Remedy ID No. 1057627 involved a challenge to Petitioner's earned time credit based upon his alleged incorrect security classification. Furthermore, Petitioner does not dispute that he failed to fully exhaust Remedy ID No. 1008857. Thus, the record reveals that Petitioner never fully exhausted his administrative remedies with respect to his claim in this matter. Since Petitioner failed to properly exhaust administrative remedies, the undersigned concludes, and hereby respectfully recommends, that this matter should be dismissed. Notwithstanding Petitioner's failure to exhaust, the undersigned will briefly consider the merits of his claims.

**2.     Custody Classification:**

On December 21, 2018, the First Step Act of 2018 ("FSA") was signed into law and initiated a system that allows eligible prisoners to earn time credits for successfully completing "evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4)(A). Specifically, prisoners that successfully complete evidence-based recidivism reduction programming or productive activities "shall earn 10 days of time credits for every 30 days of successful participation. 18 U.S.C. § 3632(d)(4)(A). Additionally, a prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not

---

[3] The BOP's objective is to place an inmate in the lowest security level facility that the inmate qualifies, while maintaining population balance through the BOP.

increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(ii). A prisoner, however, may not earn FSA time credits "for an evidence-based recidivism reduction program that the prisoner successfully completed prior to the date of enactment of this subchapter," December 21, 2018. 18 U.S.C. § 3632(d)(4)(B).

The FSA created a "new risk and needs assessment system to provide appropriate programing for prisoners." Musgrove v. Ortiz, 2019 WL 2240563, * 2 (D.N.J. May 24, 2019). Thus, FSA added subsection (h) to 18 U.S.C. § 3621. Pursuant to Section 3621(h), the BOP was required to create the risk and needs assessment system by January 15, 2020, begin implementing it on that date, and have full implementation complete on January 15, 2022. See Goodman v. Ortiz, 2020 WL 5015613 (D.N.J. Aug. 25, 2020). On July 19, 2019, the Attorney General published this system, entitled "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN"). The BOP uses PATTERN to evaluate "the recidivism risk of each prisoner as part of the intake process, and classifies each prisoner as having minimum, low, medium, or high risk for recidivism." United States v. Tinsley, 2021 WL 5084691, * 16 (D.Md. Nov. 2, 2021); also see 18 U.S.C. §§ 3632(a)(1), (4)). The BOP further utilizes PATTERN to "reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison." Id. Two scores are calculated by utilizing PATTERN: (1) A person's risk of reoffending in general; and (2) A person's risk of reoffending with a crime of violence. For males, PATTERN includes the following "risk items": (1) An inmate's current age; (2) Whether he has a Walsh conviction; (3) Whether he committed a violent offense; (4) His criminal history points; (5) His history of escapes; (6) His history of violence; (7) His education score, such as whether he is enrolled in a GED program or

9

has the equivalent of a high school diploma; (8) Completion of drug treatment programs; (9) All incident reports in the past 120 months; (10) Whether these incident reports were serious; (11) The amount of time since the last incident report; (12) Whether he agreed to participate in the financial responsibility program;[4] (13) The number of eligible programs completed; and (14) The number of work programs completed. Depending on the scoring in each category, the inmate is given fourteen general and violent scores that are totaled to assess whether the inmate is a minimum, low, medium, or high risk of reoffending in general and with a crime of violence. At a minimum, the BOP must reassess an inmate's PATTERN score annually if the inmate successfully participates in evidence-based recidivism reduction programming or productive actives. 18 U.S.C. § 3632(d)(5).

Citing Program Statement 5100.08, Petitioners requests an order compelling BOP staff to correct an alleged error in the calculation of his criminal history points that is affecting his security classification. Petitioner claims that his criminal history was miscalculated in his PSR as filed in the Eastern District of Michigan and that this incorrect calculation led to an improper security classification by the BOP. Petitioner contends that the foregoing effects the "execution" of his sentence because a lower security level will allow him to receive additional FSA earned time credits. Neither Section 3621(b) nor the BOP's Program Statement (P.S. 5100.08) contain explicit mandatory language or standards limiting the BOP's discretion, which may have given rise to an inmate's right to a particular security classification. Title 18 U.S.C. § 3621(b) clearly vests the BOP with broad discretionary authority as to prisoners' placement and classification while incarcerated. 18 U.S.C. § 3621. The language of this statute which provides that the "Bureau may

---

[4] The PATTERN form on the BOP's website appears to contain a misnumbering. Although there appears to be fifteen "risk factors," the from omits number 12 from its numbering. *See* https://www.bop.gov/inmates/fsa/docs/male_pattern_form.pdf?v=1.3

designate any available penal or correctional facility that meets minimum standards of health and habitability . . . that the Bureau determines to be appropriate and suitable," is clearly permissive; the statute does not *mandate* that the BOP place a prisoner in a certain facility.[5] Additionally, P.S. 5100.08 allows the BOP to use its "professional judgment" in deciding an inmate's classification. Specifically, P.S. 5100.08[6] states, in pertinent part, as follows:

> It should be clearly understood that the Custody Classification Form only recommends an inmate's custody. The Unit Team and/or Warden is the final review authority. The intent of the Custody Classification system is to permit staff to use professional judgment within specific guidelines.

P.S. 5100.08, Chapter 6, p. 1. Thus, the "classification and transfer of inmates among authorized institutions is peculiarly an administrative function fully within the discretion given to prison officials." O'Bar v. Pinion, 953 F.2d 74, 84 (4th Cir. 1991); also see Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)(stating that "[p]rison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional

---

[5] Title 18 U.S.C. § 3621 provides that the BOP may consider the following in determining placement of prisoners:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court state imposed the sentence - -
        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to 994(a)(2) of Title 28.

[6] P.S. 5100.08 sets forth the BOP's policies and procedures for the inmate classification system. P.S. 5100.08 provides that "classification of inmates is necessary to place each inmate in the most appropriate security level institution that also meets their program needs and is consistent with the Bureau's mission to protect society."

security").

Next, federal prisoners have no constitutional or inherent right to receive a particular security or custody classification. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). The Fourth Circuit has specifically stated that "[t]he federal constitution itself vests no liberty interest in inmates retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . .  And is not otherwise violative of the Constitution." Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994), cert. denied, 513 U.S. 889, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994); see also Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995)(finding that "a prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation"); Posey v. Dewalt, 86 F. Supp.2d 565, 571 (E.D.Va. 1999), appeal dismissed by, 215 F.3d 1320 (4th Cir. 2000), cert. denied, 531 U.S. 971, 121 S.Ct. 411, 148 L.Ed. 318 (2000)(stating that "[p]ut simply, petitioner has not stated a due process claim because he has no protected liberty interest in a particular classification within BOP"). ).

Notwithstanding the foregoing, the undersigned will briefly consider the merits of Petitioner's claim that his security classification is incorrect. The undersigned notes that an inmate's Criminal History Points are used by the BOP to calculate an inmate's Criminal History

Score.[7] (Document No. 9-1, p. 3.) Relying upon P.S. 5100.08's definition of Criminal History Points and Chapter 4 of the Sentencing Guidelines, Petitioner argues that the BOP is incorrectly calculating his security classification. Relying upon U.S.S.G. § 4A1.2(e), Petitioner argues that that his prior offenses occurring in 1985 and 1987 should not be considered by the BOP in the determination of his Criminal History Points. (Document Nos. 1 and 2.) P.S. 5100.08, however, defines Criminal History Points as follows:

> Criminal History Points are used to calculate the Bureau's Criminal History Score. The Criminal History Points is the calculation, as specified by the U.S. Sentencing Commission Guidelines (Guidelines Manual, Chapter 4), which assigns a numerical value based on the individual's entire criminal record of convictions. Ordinarily, the Criminal History Points are calculated by the United States Probation Office.

P.S. 5100.08, Chapter 2, p. 1. P.S. 5100.08 further provides that the Criminal History Score is "derived from the U.S. Sentencing Guidelines Criminal History Points, as reflected in the final judgment and the SOR. If not found in either the Judgment or SOR, use the points assessed by the [United States Probation Officer] in the PSR." Id., Chapter 4, p. 8. Petitioner does not dispute that his 1985 and 1987 offenses were considered in the calculation of his Criminal History Points in his PSR. Instead, Petitioner now disputes that his PSR at the time of his conviction correctly calculated his Criminal History Points. Petitioner argues that pursuant to U.S.S.G. § 4A1.2(e), his prior offenses occurring in 1985 and 1987 should not have been considered in the determination of his Criminal History Points in his PSR. Although Petitioner has made numerous attempts to

---

[7] The Criminal History Score is a number between 0 – 10 and an inmate's Criminal History Score is determined by referencing a chart that outlines how the Criminal History Points correlates to the Criminal History Score. (Document No. 9-1, p. 3.) Petitioner's Criminal History Points was 14 as taken from his PSR. (Id.) Referencing the chart, Petitioner's Criminal History Points of 14 correlated to a Criminal History Score of 10. (Id.) In his Declaration, Mr. White declares that "Petitioner's current [Criminal History Points] of 14 and [Criminal History Score] of 10 are correct and are in accordance with the information from Petitioner's Security/Designation Data form." (Id., p. 4.)

challenge the validity of his 2014 conviction and sentence, all attempts have been unsuccessful.[8] (See Civil Action No. 1:19-cv-00072, Document No. 20, pp. 1 – 8.) In his Declaration, Mr. White states that "where the [Criminal History Points] was calculated by the USPO in the PSR, the procedure is strictly to take the [Criminal History Points] from the relevant court documents." (Document No. 9-1, p. 4.) Mr. White further states that since the Criminal History Points are "taken directly from court documents such as the PSR, the BOP does not change an inmate's [Criminal History Points] unless the relevant court documents are amended." (Id.) Mr. White concludes that "since the [Criminal History Score] is derived from the [Criminal History Points], it follows the [Criminal History Score] cannot be changed absent an amendment to the relevant court documents, as well."[9] (Id.) Thus, the undersigned finds that the BOP is correctly obtaining Petitioner's

---

[8] Petitioner also acknowledges that during his underlying sentencing hearing, Petitioner unsuccessfully objected to his criminal history as set forth in the PSR. (See Document No. 11-1, pp. 5 – 21.)

[9] In his Declaration, Mr. White explains the calculation of Petitioner's Criminal History Points as contained in the PSR as follows:

\* \* \*

34. Petitioner's criminal history, as outlined in his PSR, shows that he was sentenced to a period of incarceration of 1.5 – 5 years in Detroit, MI Circuit Court case 87-0423 on February 20, 1987.
35. On the same date, Petitioner was sentenced to a period of incarceration on two separate counts to 1 – 4 years and 2 years, consecutive.
36. Soon after, Petitioner was sentenced to a period of incarceration of 2 – 5 years in Pontiac, MI Circuit Court case 86-72853 on March 31, 1987.
37. While incarcerated on the above charges, Petitioner was convicted of committing a new offense in prison, and he was sentenced on December 16, 1988, to a consecutive term of 5 – 15 years incarceration in Coldwater, MI Circuit Court case 88-07-4646.
38. Petitioner paroled from the Michigan Department of Corrections of each of these offenses on January 20, 2003.
39. The PSR clarified that the Michigan Department of Corrections policy regarding termination of sentences is, if an offender is serving consecutive sentences, none of the sentences which are part of the consecutive string shall be terminated until all sentences in the string have been served.
40. If an offender is serving two or more consecutive strings, consecutive

Criminal History Points from his PSR as set forth in P.S. 5100.08. Additionally, BOP staff are not violating BOP policy by obtaining Petitioner's Criminal History Points from Petitioner's PSR. Accordingly, the undersigned respectfully recommends that Petitioner's Petition and Supplement be dismissed.[10]

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **DENY** Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and Supplement. (Document Nos. 2 and 3), and **REMOVE** this matter from the Court's docket.

The Petitioner is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge David A. Faber. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

---

sentences in the non-controlling strings shall be terminated upon completion of the appropriate maximum sentence. However, if a sentence is consecutive to more than one consecutive string, the sentence shall remain active until the controlling string has been served, even though the other sentences in the non-controlling strings are terminated.
41. Accordingly, since all of Petitioner's Michigan Circuit court sentences were in a consecutive "string," none of the offenses terminated prior to Petitioner's parole date of January 30, 2003.
42. The offense for which Petitioner is serving his current term of incarceration occurred on April 29, 2014.

\* \* \*

(Document No. 9-1, pp. 4 – 5.)

[10] The undersigned notes that Petitioner is a frequent filer having initiated at least 17 actions in this Court: 1:19-cv-00025, 1:19-cv-00072, 1:19-cv-00125, 1:19-cv-00229, 1:19-cv-00771, 1:20-cv-00273, 1:20-cv-00328, 1:20-cv-00358, 1:20-cv-00424, 1:20-cv-00790, 1:22-cv-00222, 1:22-cv-00276, 1:22-cv-00288, 1:22-cv-00304, 1:22-cv-00379, 1:23-cv-00103, and 1:23-cv-00127.

Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and counsel of record.

ENTER: May 1, 2023.



Omar J. Aboulhosn
United States Magistrate Judge